IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-00563-RBJ

W.L. (BILL) ARMSTRONG;
JEFFREY S. MAY;
WILLIAM L. (WIL) ARMSTRONG III;
JOHN A. MAY;
DOROTHY A. SHANAHAN; and
CHERRY CREEK MORTGAGE CO., INC.,
a Colorado corporation,

       Plaintiffs,

v.

KATHLEEN SEBELIUS, in her official capacity as
Secretary of the United States Department of Health
and Human Services;
SETH D. HARRIS, in his official capacity as Acting
Secretary of the United States Department of Labor,
JACOB J. LEW, in his official capacity as Secretary
of the United States Department of Treasury;
UNITED STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES;
UNITED STATES DEPARTMENT OF LABOR; and
UNITED STATES DEPARTMENT OF THE TREASURY,

       Defendants.

ORDER

       The case is before the Court again on plaintiffs' motion for a preliminary injunction. For the reasons set forth herein, the Court now grants the motion.

**Facts**

       Plaintiffs, Cherry Creek Mortgage Co., Inc. and its owners, sued the government to enjoin application of certain parts of the Patient Protection and Affordable Care Act and the

1

Health Care and Education Reconciliation Act (collectively the "Affordable Care Act") to them. Specifically, plaintiffs challenge what they call the "HHS Mandate," which requires certain employers, including Cherry Creek, to include coverage for what the plaintiffs consider to be abortion-inducing drugs and devices in the company's group health insurance plan. The gist of the claim is that forcing Cherry Creek to provide such coverage is a substantial burden on the individual owners' right to exercise their anti-abortion beliefs as practicing Evangelical Christians.

Hobby Lobby.

There have been several lawsuits similar to this one filed in various jurisdictions, including at least three in this district. In many if not all of them, plaintiffs sought a preliminary injunction. As of the time of the preliminary injunction hearing in this case the courts, both at the district and circuit level, were split. One of the decisions denying a preliminary injunction was that of Judge Heaton in the Western District of Oklahoma. *Hobby Lobby Stores, Inc. v. Sebelius,* 870 F. Supp. 1278 (W.D. Okla. 2012). Significantly, a two-judge motions panel of the Tenth Circuit then denied plaintiffs' motion for a preliminary injunction pending appeal in that case. *Hobby Lobby Stores, Inc. v. Sebelius,* no. 12-6294, 2012 WL 6930302 (10th Cir. Dec. 20, 2012). The panel concluded: "We do not think there is a substantial likelihood that this court will extend the reach of RFRA[1] to encompass the independent conduct of third parties with whom the plaintiffs have only a commercial relationship." *Id.* at *3.

The Tenth Circuit, however, agreed to hear the matter en banc and set oral argument for May 23, 2013, not quite two weeks after the preliminary injunction hearing in this Court in the present case. The motion panel's conclusion that plaintiffs probably could not establish a substantial likelihood of success, coupled with the fact that the en banc argument was imminent,

---

[1] The Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb to bb-4.

were influential factors in this Court's denial of the motion for a preliminary injunction. *See* Transcript, May 10, 2013 [#42] at 89-97. The Court noted, of course, that it would follow the lead of the en banc panel once its decision was announced. *Id.* at 98. Shortly thereafter plaintiffs filed a notice of appeal. [#39].

The en banc panel did come out differently. First, by way of quick review, the party seeking the injunction must show "(1) likelihood of success on the merits; (2) a likely threat of irreparable harm to the movant; (3) the harm alleged by the movant outweighs any harm to the non-moving party; and (4) an injunction is in the public interest." *Hobby Lobby Stores, Inc. v. Sebelius,* No. 2013 WL 3216103, at *8 (10th Cir. June 27, 2013) (en banc). A majority of five judges held that the district court erred in concluding that the plaintiffs had not demonstrated a likelihood of success on their RFRA claim. *Id.* at *1. The same majority of five judges also held that plaintiffs had satisfied the irreparable harm element of the preliminary injunction standard. *Id.* A plurality of four judges also concluded that plaintiffs had satisfied the other two elements (balance of the equities and public interest). The court therefore reversed the district court denial of a preliminary injunction, but because there was not a majority as to the third and fourth prongs of the test, the court remanded the case with instructions that the district court address those factors and then reassess whether to grant or deny the preliminary injunction. *Id.* at **1-2.

On remand, after holding another hearing (apparently limited to briefs and oral argument) Judge Heaton found that the balance of the equities favored the plaintiffs, and that the public interest favored the preservation of the status quo until the issues raised by the plaintiffs could be finally resolved on their merits. Accordingly, the court granted a preliminary injunction restraining the government defendants from "any effort to apply or enforce, as to plaintiffs, the

substantive requirements imposed in 42 U.S.C. § 300gg-13(a)(4). *Hobby Lobby Stores, Inc. v. Sebelius,* No. CIV-12-1000, 2013 WL 3869832, at *2 (W.D. Okla. July 19, 2013).

Further Proceedings in the Present Case

Shortly after the Tenth Circuit's en banc decision in *Hobby Lobby* was announced plaintiffs asked this Court to reverse its previous denial of the preliminary injunction. [#48]. The government filed a brief in opposition, arguing that the irreparable harm analysis here is different than that which existed in *Hobby Lobby,* and that in any event, the plaintiffs had not established that the balance of the equities and the public interest factors (which were the subject of the remand in *Hobby Lobby*) favored the entry of a preliminary injunction. [#49]. That response was filed one day before Judge Heaton issued the injunction on remand.

On August 1, 2013 this Court issued an order asking whether the government continued to oppose a preliminary injunction here and, assuming that it did, posing two questions to both parties: (1) did plaintiffs' pending appeal deprive this Court of jurisdiction to enter the injunction as requested, and (2) if not, is there evidence in the record on which the Court can act without another hearing. The parties took conflicting positions concerning the Court's jurisdiction to act. However, that is now moot in view of the circuit's resolution of plaintiffs' appeal, discussed below.

With respect to the second question, the parties agreed that another hearing was not only unnecessary but inappropriate. Plaintiffs' response [#52] at 6; government's response [#51] at 6. The government pointed to certain documents cited in its original brief in opposition to the motion for preliminary injunction, namely, an Institute of Medicine report; the preambles to the July 2010 interim final rules and the February 2012 final rules; and portions of the legislative history of the preventive services coverage provisions. [#51 at 6]. Those documents, the

government contends, "support the government's position that an injunction is contrary to the public interest because it would interfere with the government's goals of improving the health of women and children and promoting public equality and that an injunction would harm third parties – namely the employees of Cherry Creek." *Id.* The government also cited certain "admissions" in the plaintiffs' complaint.

The plaintiffs took a different tack, and a little background will help. At the beginning of the preliminary injunction hearing, I asked the parties whether the plaintiffs planned on presenting evidence. Plaintiffs' counsel responded that plaintiffs would not be presenting evidence because the parties had stipulated that the facts alleged in plaintiffs' verified complaint may be accepted as true for purposes of preliminary injunction determination. Transcript [#42] at 3. Government counsel agreed. *Id.* at 4. Now, in response to the Court's second question, plaintiffs took the position that their allegations, accepted as true, provided all the information the Court needs to grant the injunction. [#51 at 5-12]. In contrast, plaintiffs argue, the government relies on hearsay and speculation. *Id.* at 5.

The parties then jointly moved in the Tenth Circuit for an order summarily reversing this Court's denial of a preliminary injunction and remanding the case for consideration of the remaining preliminary injunction factors in light of the en banc decision in *Hobby Lobby*. The court agreed, finding that "plaintiff Cherry Creek has established a substantial likelihood of success on the merits of its RFRA claim, and that the district court erred in concluding otherwise." *Armstrong v. Sebelius,* No. 13-1218, 2013 WL 4757949, at *1 (10th Cir. Sept. 5, 2013). The court remanded the case for further proceedings consistent with the *Hobby Lobby* decision. *Id.*

**Conclusions**

This Court denied plaintiffs' motion for a preliminary injunction based on its conclusion that plaintiffs had not established a substantial likelihood of success on the merits. That conclusion has now been reversed. The case returns, therefore, for this Court's consideration of the remaining three prongs of the preliminary injunction standard. As indicated, the parties agree that the Court need not, indeed should not, take further evidence. Neither party has requested further oral argument, although there has been only a short time since the remand was ordered. In any event, I am satisfied that further argument would not be of material assistance, and therefore I turn to the remaining issues aided by the record already established.

<u>Irreparable Harm</u>

The irreparable harm issue was essentially resolved in plaintiffs' favor by the holding of the five-judge majority on that issue in *Hobby Lobby*. In its response to the plaintiffs' motion to enter an injunction "forthwith" following the en banc decision, the government attempted to distinguish our case on the basis that plaintiffs waited until three months after the contraceptive coverage requirement took effect before filing this suit and seeking preliminary injunctive relief, and that during that three-month period plaintiffs continued to provide the coverage to which they object. [#49 at 1]. I am not persuaded. In the verified complaint [#1], the allegations of which have been stipulated as true for this purpose, plaintiffs allege that after they discovered that Cherry Creek's health insurance plan provided the objectionable coverage to the approximately 400 of its approximately 730 employees who presently participate in the plan, they immediately expressed their religious objections to the insurer. They received confirmation that, without injunctive relief from a court, the insurer was required by the HHS Mandate to

provide the coverage. Therefore, Cherry Creek complied with the mandate but began to explore ways of eliminating the coverage. *Id.* at ¶¶ 8-11. This suit was filed on March 5, 2013. Under the circumstances, I cannot find that plaintiffs slept on their rights.

The verified complaint alleges, among other things, that being forced to continue to comply with the mandate "will have a profound and adverse effect on Plaintiffs and how they negotiate contracts and compensate their employee," *id.* ¶ 98, and "will make it difficult for Plaintiffs to attract quality employees because of uncertainty about health insurance benefits," *id.* ¶ 99. They further allege that, if they refuse to provide health insurance to their employees or omit the objectionable drugs and devices from the coverage, they will be subjected to enforcement actions and very substantial monetary penalties that could put Cherry Creek out of business. *Id.* at ¶¶ 76-81. Beyond that, in the eyes of the individual plaintiffs, each day that Cherry Creek is forced to provide the objectionable coverage their sincerely held religious beliefs are violated. *Id. passim.* Accepting all of these allegations as true, the Court concludes that plaintiffs have met their burden of showing "a likely threat of irreparable harm to the movant."

Balancing the Harms

The third requirement for a preliminary injunction is that "the harm alleged by the movant outweighs any harm to the non-moving party." On remand Judge Heaton found that "the government's interest in providing Hobby Lobby and Mardel's 13,000 employees with access to all FDA-approved contraceptive methods, through their employment-based health plans, is not insignificant." *Hobby Lobby Stores, Inc. v. Sebelius,* 2012 WL 3869832 at *1. However, he tempered his assessment by noting that the bulk of the FDA-approved methods of contraception will still be available to the employees notwithstanding the preliminary injunction (because the

plaintiffs did not object to such methods), unlike other employees who were exempted from the contraceptive-coverage requirement of the Affordable Care Act. He compared that to the harms, particularly the substantial monetary penalties and violation of religious rights, that were alleged by the plaintiffs. On balance, "the court finds that the threatened injury to the corporations if the injunction does not issue outweighs the potential harm to the government." *Id.*

I take it as a given that the fact that the legislation and regulations thereunder were enacted reflects a significant governmental interest. It is difficult, possibly all but impossible, to compare that interest to the private but not insignificant interest of Cherry Creek and its owners. Nevertheless, when I attempt to balance what might be a temporary infringement on the government's interest (until the merits are ultimately resolved by the Supreme Court) with what on the face of the stipulated facts is a Hobson's Choice between a continuing infringement of religious freedom or potentially crippling monetary penalties, I join Judge Heaton in concluding that the balance of the harms tips in favor of the plaintiffs for purposes of preliminary injunctive relief.

### Public Interest

The question is whether an injunction is in the public interest. There is, long has been, and probably always will be, division within the public on issues relating to abortion. The resolution of the legal challenges to the Affordable Care Act such as those presented in this case will not end that division, but those challenges need resolution, and that is why we have courts and the rule of law. There is a general public interest in preserving the status quo while the legal proceedings take their course. In that conclusion I again join Judge Heaton. *See Hobby Lobby,* 2013 WL 3869832 at *1.

There is one irony presented by this case that was not presented in *Hobby Lobby*. Here, the status quo is that Cherry Creek Mortgage has been and still is providing the coverage to which plaintiffs object. That being so, the preliminary injunction does not preserve the status quo, which is the stuff of most injunctions, but instead alters it. The answer is that the status quo would be Cherry Creek's refusing to provide coverage for what they classify as abortifacients had they not unwittingly begun to provide the coverage and then run into an insurmountable roadblock when they directed their insurer to terminate the coverage. As such, the substance of the order entered here today is to preserve the status quo as it existed before the Affordable Care Act until the merits of the claims can be properly decided.

**Order**

The defendants, their officers and employees are preliminarily enjoined from any further effort to apply or enforce against Cherry Creek Mortgage Co., Inc. or the individual plaintiffs the preventive services requirements found at 42 U.S.C. § 300gg-13(a)(4) or the application of penalties found in 26 U.S.C. § 4980D, 26 U.S.C. § 4980H, and 29 U.S.C. § 1132, pending further order of this Court.

DATED this 17th day of September, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge