IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:13-cv-00563-RBJ-BNB

W.L. (BILL) ARMSTRONG;
JEFFREY S. MAY;
WILLIAM L. (WIL) ARMSTRONG III;
JOHN A. MAY;
DOROTHY A. SHANAHAN; and
CHERRY CREEK MORTGAGE CO., INC., a Colorado corporation;

   Plaintiffs,
v.

SYLVIA M. BURWELL, in her official capacity as Secretary of the United States Department of Health and Human Services;
THOMAS E. PEREZ, in his official capacity as Secretary of the United States Department of Labor;
JACOB LEW, in his official capacity as Secretary of the United States Department of the Treasury;
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES;
UNITED STATES DEPARTMENT OF LABOR;
UNITED STATES DEPARTMENT OF THE TREASURY;

   Defendants.

---

### DEFENDANTS' NOTICE OF CONSENT TO INJUNCTION AND JUDGMENT

---

Pursuant to the Court's September 8, 2014 Minute Order (ECF No. 73), defendants respectfully submit this notice informing the Court that, in light of *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014), defendants agree that plaintiffs are entitled to judgment in their favor on their Religious Freedom Restoration Act (RFRA) claim, and the entry of a permanent injunction. Therefore, the Court need not resolve plaintiffs' pending motion for summary judgment. *See* ECF No. 58.

The parties, however, do not agree on the appropriate scope of the injunction to be entered. On September 17, 2014, defendants provided plaintiffs with the attached proposed injunction and judgment. Plaintiffs responded on September 18, 2014, stating that they object to

defendants' proposed injunction and judgment and believe the Court should enter a permanent injunction that is identical to the preliminary injunction entered by the Court on September 17, 2013 (ECF No. 56). Defendants explain below why their proposed injunction and judgment should be entered and why plaintiffs' proposed injunction is inappropriate. Defendants do not object to the Court allowing plaintiffs to submit a short brief responding to defendants' arguments below, if plaintiffs so desire.[1]

Defendants' proposed injunction, which is attached, would preclude the government from enforcing against plaintiff Cherry Creek Mortgage Co., Inc. the existing contraceptive coverage requirement—the law that was before the Supreme Court in *Hobby Lobby* and that is before this Court in this case—but would not be so broad as to enjoin application of any future regulations designed to accommodate for-profit companies with religious objections to providing coverage for contraceptive services, while ensuring that their employees still have access to such services. Indeed, the defendant Departments have already proposed such an accommodation. *See* Coverage of Certain Preventive Services Under the Affordable Care Act, 79 Fed. Reg. 51,118 (Aug. 27, 2014) (Notice of Proposed Rulemaking). Plaintiffs, on the other hand, ask this Court to enter an injunction that is ambiguous in scope, and could be read to prevent the government from enforcing not only the existing contraceptive coverage regulations, but also any future regulations designed to accommodate plaintiffs' religious beliefs by allowing them to opt out of providing contraceptive coverage. For the reasons explained below, it would be inappropriate for the Court to effectively, preemptively enjoin application of any forthcoming regulations at this time, and the injunction issued in this case should be carefully drawn to avoid such a result.

In *Hobby Lobby*, the Supreme Court held that the Affordable Care Act's contraceptive coverage requirement violated RFRA with respect to certain closely held for-profit entities that, under the current regulations, cannot opt out of the requirement. 134 S. Ct. at 2759-60, 2782,

---

[1] If plaintiffs' brief advocates for something other than a permanent injunction that is identical to the preliminary injunction entered by the Court on September 17, 2013 (ECF No. 56), then defendants request that they be given an opportunity to file an additional, short brief addressing plaintiffs' proposal.

2785. The existence of accommodations in the current regulations permitting certain nonprofit organizations to opt out of the requirement, *see* 78 Fed. Reg. 39,870, 39,874-88 (July 2, 2013), was crucial to the Supreme Court's reasoning in large part because the Court found that the opt-out provisions for nonprofits constituted a less restrictive means of furthering the government's compelling interests. The Court explained that the opt-out regulations "effectively exempt[]" organizations that are eligible for accommodations. *Hobby Lobby*, 134 S. Ct. at 2763. It emphasized that the opt-out regulations "seek[] to respect the religious liberty of religious nonprofit corporations while ensuring that the employees of [such] entities have precisely the same access to all [Food and Drug Administration (FDA)]-approved contraceptives as employees of companies whose owners have no religious objections to providing such coverage." *Id.* at 2759.

The Supreme Court described the opt-out regulations for nonprofit organizations as "an approach that is less restrictive than requiring employers to fund contraceptive methods that violate their religious beliefs." *Id.* at 2782. The Court reasoned that the accommodations available to eligible nonprofit organizations "serve[] [the government's] stated interests equally well" as the requirement currently applicable to for-profit entities because "female employees" of eligible nonprofits "continue to receive contraceptive coverage without cost sharing for all FDA-approved contraceptives, and . . . face minimal logistical and administrative obstacles" in obtaining the coverage. *Id.* (quotation omitted). Thus, the Court's conclusion that the contraceptive coverage requirement "is unlawful" under RFRA as applied to certain closely-held, for-profit entities rested on its recognition that the accommodations available to religious nonprofits "constitute[] an alternative that achieves all of the Government's aims while providing greater respect for religious liberty." *Id.* at 2759-60. The Court went on to note that "[a]lthough [the government] has made [the accommodations] available to religious nonprofits that have religious objections to the contraceptive [coverage requirement], [the government] has provided no reason why the same [accommodations] cannot be made available when the owners of for-profit corporations have similar religious objections." *Id.* at 2759.

3

In response, the defendant Departments have proposed regulations that would provide regulatory accommodations to certain closely held for-profit entities that have a religious objection to providing coverage for some or all contraceptive services otherwise required to be covered.  *See* 79 Fed. Reg. 51,118.  At the conclusion of this rulemaking process, plaintiffs may be eligible for religious accommodations that would effectively exempt them from providing coverage for contraceptives to their employees while ensuring that their employees will receive coverage without cost sharing for all FDA-approved contraceptives.

Accordingly, defendants agree to the attached proposed injunction and judgment.  The proposed injunction specifies, consistent with the Supreme Court's decision in *Hobby Lobby*, that it does not prevent defendants from enforcing the contraceptive coverage requirement against plaintiffs "if religious accommodations . . . are made available to for-profit entities" and plaintiffs do not either avail themselves of those accommodations or provide contraceptive coverage.  This language is simply intended to make clear that while the injunction precludes enforcement of existing law, it would not preclude enforcement of any future, substantively different regulations, which would be entitled to a "presumption of validity."  *See, e.g.*, *Chamber of Commerce v. EPA*, 642 F.3d 192, 208 (D.C. Cir. 2011).  Plaintiffs are of course free to challenge any future accommodations should they choose to do so.

If plaintiffs' proposed language were adopted, defendants—out of an abundance of caution—might have to come back to the Court to seek relief from the injunction before enforcing the new rules, which would impose a significant burden on defendants and the Court, and would improperly treat any new regulations as presumptively invalid before they are even promulgated.  Such an ambiguous injunction would not satisfy the specificity requirements of Federal Rule of Civil Procedure 65(d)(1), and would run afoul of the Supreme Court's admonition that, "[s]ince an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed."  *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974); *see also id*. ("Rule [65(d)] was designed to prevent uncertainty and confusion on the part of those faced with injunctive

orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood."). Furthermore, it is well established that "injunctive relief should be no broader than necessary to provide full relief to the aggrieved party." *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 170 (3d Cir. 2011); *see also, e.g.*, *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 145 (2d Cir. 2011); *PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111, 128 (4th Cir. 2011) (observing that an injunction may "address only the circumstances of the case"). Plaintiffs' proposed injunction is overbroad or otherwise inappropriate, and thus, should be rejected (or, at the very least, modified).[2]

In essence, plaintiffs would have the Court enjoin the enforcement of regulations that do not yet exist, and that, if and when they are promulgated, will be substantively different from the regulations that the Supreme Court held to be invalid in *Hobby Lobby*. Plaintiffs will, of course, be free to challenge any new regulations once they are promulgated if their religious concerns are not resolved, as defendants' proposed injunction makes clear. Plaintiffs have it backwards when they suggest that the government invites the Court to speculate on future regulations that do not exist. In fact, it is *plaintiffs* that ask this Court to effectively opine on yet-to-be finalized regulations, which are entitled to a presumption of validity, by issuing an injunction that might prevent the government from enforcing those regulations before they are even developed. Defendants, by contrast, only want to ensure that the scope of the injunction is well-defined and limited to current law.

There are at least three additional problems with the language proposed by plaintiffs. First, the permanent injunction should enjoin enforcement of the applicable provisions only as to the corporate plaintiff, Cherry Creek Mortgage Co., Inc., and should not extend to the individual

---

[2] The fact that the language proposed by plaintiffs is identical to the language adopted by the Court as a *preliminary* injunction does not prevent defendants from objecting to plaintiffs' attempt to make that language *permanent*. *See, e.g.*, *Sole v. Wyner*, 551 U.S. 74, 84 (2007) (noting the "tentative character" of a preliminary injunction, which "ha[s] no preclusive effect in the continuing litigation"). As explained above, the language of the preliminary injunction, if adopted as a permanent injunction, is overbroad and would threaten to enjoin agency action that is presumptively valid. Moreover, the Court should consider intervening authority and events since the preliminary injunction was entered before entering a permanent injunction.

plaintiffs. The Supreme Court's decision in *Hobby Lobby* addressed only the corporate plaintiffs' RFRA claim. The Court determined that "[t]he contraceptive mandate, *as applied to closely held corporations*, violates RFRA." *Hobby Lobby*, 134 S. Ct. at 2785 (emphasis added). Having done so, the Court had no occasion to address the RFRA claims of the individual plaintiffs who owned the corporations. The same is true here. Moreover, as a practical matter, an injunction against enforcement of the applicable provisions as to the corporate plaintiff will protect the individual plaintiffs because the government will be enjoined from enforcing the contraceptive coverage requirement against the company they own and control. The permanent injunction, therefore, should be limited to Cherry Creek Mortgage Co., Inc.

Second, the permanent injunction should not enjoin application of the penalties found in 26 U.S.C. § 4980H, as plaintiffs' proposed injunction does (*see* ECF No. 56), because that statutory provision has no relevance to this case. Section 4980H penalties could, starting in 2015, be imposed, for example, if Cherry Creek Mortgage Co., Inc. were to drop health coverage altogether and at least one of its employees is certified as having been enrolled in a qualified health plan and allowed a premium tax credit under 26 U.S.C. § 36B or paid a cost sharing reduction under section 1412 of the Affordable Care Act. There are no penalties in § 4980H related to the failure to provide contraceptive coverage (or any other preventive service). The penalties that address such a failure are found in 26 U.S.C. § 4980D, a provision that defendants agree should be enjoined with respect to Cherry Creek Mortgage Co., Inc.'s failure to provide contraceptive coverage.

Third, the permanent injunction should not extend to all of "the preventive services requirements found at 42 U.S.C. § 300gg-13(a)(4)." ECF No. 56. Plaintiffs have challenged only the requirement that Cherry Creek Mortgage Co., Inc. provide its employees with health coverage for contraceptive methods, sterilization procedures, and related patient education and counseling to which plaintiffs object on religious grounds. Accordingly, the permanent injunction should extend to only those specific preventive services, as defendants' proposal does, not to all preventive services for women.

6

Respectfully submitted this 22nd day of September, 2014,

>JOYCE R. BRANDA
>Acting Assistant Attorney General
>
>JOHN F. WALSH
>United States Attorney
>
>JENNIFER RICKETTS
>Director
>
>SHEILA M. LIEBER
>Deputy Director
>
>/s/ Michelle R. Bennett
>MICHELLE R. BENNETT (CO Bar No. 37050)
>Trial Attorney
>United States Department of Justice
>Civil Division, Federal Programs Branch
>20 Massachusetts Avenue N.W.  Room 7310
>Washington, D.C.  20530
>Tel: (202) 305-8902
>Fax: (202) 616-8470
>Email: michelle.bennett@usdoj.gov
>
>Attorneys for Defendants.

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 22, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notice of such filing to all parties.

                                      /s/ Michelle R. Bennett
                                      MICHELLE R. BENNETT
                                      Trial Attorney